1                    UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF NORTH CAROLINA
2                          WESTERN DIVISION

3

4    UNITED STATES OF AMERICA,      )
                                    )
5                                   )
                    PLAINTIFF,      )
6                                   )
              VS                    ) CASE NO. 5:11-CR-12-1D
7                                   )
                                    )
8    THOMAS GRANDVILLE ALSTON,      )
                                    )
9                    DEFENDANT.     )

10

11

                            SENTENCING
12
                         FEBRUARY 8, 2012
13
            CHIEF DISTRICT JUDGE JAMES C. DEVER III
14

15

16   APPEARANCES:

17        MR. J. FRANK BRADSHER
          ASSISTANT UNITED STATES ATTORNEY
18        310 NEW BERN AVENUE
          RALEIGH, NC   27601
19        (FOR THE GOVERNMENT)

20        MR. JONATHAN SILVERMAN
          ATTORNEY AT LAW
21        205 COURTLAND DRIVE
          P. O. BOX 1320
22        SANFORD, NC   27330
          (FOR THE DEFENDANT)

23

24

25   SHARON K. KROEGER, COURT REPORTER
     MACHINE SHORTHAND REPORTER, COMPUTER AIDED TRANSCRIPTION

1           THE COURT:  WE WILL NEXT TAKE UP MR. ALSTON'S

2    CASE.

3           GOOD MORNING, MR. SILVERMAN.

4           MR. SILVERMAN:  GOOD MORNING, YOUR HONOR.

5           THE COURT:  ARE YOU AND MR. ALSTON READY TO

6    PROCEED?

7           MR. SILVERMAN:  YES, SIR, WE ARE.

8           THE COURT:  MR. BRADSHER, IS THE UNITED STATES

9    READY?

10          MR. BRADSHER:  YES, YOUR HONOR.

11          THE COURT:  AT THIS TIME, I WOULD ASK THAT MR.

12   ALSTON BE SWORN OR AFFIRMED.

13          (WHEREUPON, THE DEFENDANT WAS SWORN.)

14          THE COURT:  MR. ALSTON, DO YOU UNDERSTAND THAT

15   HAVING BEEN SWORN THAT YOU ANSWERS TO MY QUESTIONS ARE

16   SUBJECT TO THE PENALTY OF PERJURY, SIR?

17          THE DEFENDANT:  YES, SIR.

18          THE COURT:  HAVE YOU TAKEN ANY KIND OF

19   MEDICINE OR ANY OTHER SUBSTANCE IN THE LAST 48 HOURS THAT

20   WOULD AFFECT YOUR ABILITY TO HEAR AND UNDERSTAND THESE

21   PROCEEDINGS?

22          THE DEFENDANT:  NO, SIR.

23          THE COURT:  DO YOU KNOW WHY YOU ARE HERE

24   TODAY?

25          THE DEFENDANT:  YES, SIR.

1        THE COURT:  DO YOU KNOW WHAT WE ARE DOING

2   TODAY?

3        THE DEFENDANT:  YES, SIR.

4        THE COURT:  MR. SILVERMAN, DO YOU HAVE ANY

5   REASON TO DOUBT MR. ALSTON'S COMPETENCE TO GO FORWARD

6   TODAY?

7        MR. SILVERMAN:  NO, SIR.

8        THE COURT:  MR. BRADSHER, DO YOU HAVE ANY

9   REASON TO DOUBT MR. ALSTON'S COMPETENCE TO GO FORWARD

10  TODAY?

11       MR. BRADSHER:  NO, YOUR HONOR.

12       THE COURT:  BASED ON MR. ALSTON'S ANSWERS TO

13  THE COURT'S QUESTIONS, THE COURT'S OBSERVATIONS OF MR.

14  ALSTON AND THE ANSWERS FROM COUNSEL, THE COURT FINDS THAT

15  MR. ALSTON IS COMPETENT TO GO FORWARD HERE TODAY.

16       MR. ALSTON, AS YOU KNOW, YOU ARE HERE TODAY

17  HAVING ENTERED A PLEA OF GUILTY TO TWO CHARGES.  THE

18  FIRST CHARGE IS CONSPIRACY TO DISTRIBUTE AND TO POSSESS

19  WITH THE INTENT TO DISTRIBUTE 5 KILOGRAMS OR MORE OF

20  COCAINE.

21       THE SECOND CHARGE IS MONEY LAUNDERING.

22       YOU ENTERED A PLEA OF GUILTY TO THOSE CHARGES

23  IN APRIL 2011 PURSUANT TO A WRITTEN PLEA AGREEMENT.

24       IN LIGHT OF SOME CASES FROM THE SUPREME COURT

25  OF THE UNITED STATES, INCLUDING THE BOOKER, RITA, GALL,

1   KIMBROUGH, SPEARS AND NELSON CASES, THE SENTENCING

2   GUIDELINES ARE NO LONGER MANDATORY.  THEY ARE ADVISORY.

3           NEVERTHELESS, IN ACCORDANCE WITH THOSE CASES

4   AND SOME CASES FROM THE FOURTH CIRCUIT INTERPRETING THOSE

5   CASES, INCLUDING THE CARTER, PAWLEY, AND EVANS CASES, A

6   SENTENCING COURT STILL MUST TAKE INTO ACCOUNT THE NOW

7   ADVISORY GUIDELINES.

8           THE COURT DOES THE BY INITIALLY MAKING

9   FINDINGS OF FACT AND CALCULATING AN ADVISORY GUIDELINE

10  RANGE.  THE COURT THEN CONSIDERS ANY MOTION THAT MIGHT BE

11  MADE THAT MIGHT MOVE THAT RANGE EITHER UP OR DOWN.

12          THE COURT WILL THEN CONSIDER ALL ARGUMENTS

13  THAT YOUR LAWYER MAKES, ANY STATEMENT YOU WOULD LIKE TO

14  MAKE, AND ALL ARGUMENTS THAT THE ASSISTANT UNITED STATES

15  ATTORNEY MAKES.

16          THE COURT WILL THEN DETERMINE YOUR SENTENCE

17  AND ANNOUNCE IT HERE TODAY IN COURT.  THAT WILL BE THE

18  PROCESS THAT WE WILL FOLLOW.

19          MR. SILVERMAN, DID YOU RECEIVE A COPY OF THE

20  PRESENTENCE REPORT?

21          MR. SILVERMAN:  I DID, SIR.

22          THE COURT:  AND MR. ALSTON, DID YOU RECEIVE A

23  COPY OF THAT REPORT, SIR?

24          THE DEFENDANT:  YES, SIR.

25          THE COURT:  HAVE YOU SPOKEN WITH YOUR LAWYER

1    ABOUT IT?

2              THE DEFENDANT:  YES, SIR.

3              THE COURT:  AT THIS TIME, THE COURT DIRECTS

4    THAT THE PRESENTENCE REPORT BE PLACED IN THE REPORT UNDER

5    SEAL.

6              IN CORRESPONDENCE WITH THE FEDERAL RULES OF

7    CRIMINAL PROCEDURE, THE COURT ACCEPTS AS ACCURATE THE

8    PRESENTENCE REPORT EXCEPT AS TO MATTERS IN DISPUTE AS SET

9    FORTH IN THE ADDENDUM.

10             THE COURT HAS REVIEWED THE ENTIRE REPORT,

11   INCLUDING THE ADDENDUM.  THE ADDENDUM DOES CONTAIN

12   CERTAIN OBJECTIONS.

13             MR. SILVERMAN, DOES THE DEFENDANT PERSIST IN

14   THOSE OBJECTIONS AND WISH TO BE HEARD ON THEM?

15             MR. SILVERMAN:  YOUR HONOR, WE WITHDREW THOSE

16   OBJECTIONS ON MONDAY OF THIS WEEK.

17             THE COURT:  OKAY.

18             MR. SILVERMAN:  AND THERE SHOULD BE SOMETHING

19   OF RECORD INDICATING THAT WE DID WITHDRAW THEM.

20             THE COURT:  OKAY.  MR. ALSTON, IS THAT

21   CORRECT; THOSE OBJECTIONS ARE WITHDRAWN?

22             THE DEFENDANT:  YES, SIR.

23             THE COURT:  OKAY.  ANY OBJECTIONS FROM THE

24   UNITED STATES?

25             MR. BRADSHER:  NO, YOUR HONOR.

1          THE COURT:  ALL RIGHT.  THEN FOR PURPOSES OF

2    BOOKER AND ITS PROGENY, THE COURT CALCULATES THE ADVISORY

3    GUIDELINE RANGE AS FOLLOWS:

4          THE TOTAL OFFENSE LEVEL IS 37.  THE CRIMINAL

5    HISTORY CATEGORY IS VI.  THE ADVISORY GUIDELINE RANGE ON

6    COUNT 1 IS 360 MONTHS TO LIFE.  THE GUIDELINE RANGE --

7    THE ADVISORY GUIDELINE RANGE ON COUNT 2 IS 240 MONTHS.

8    IT'S CAPPED AT 240 MONTHS BECAUSE THAT IS THE STATUTORY

9    MAXIMUM FOR THE MONEY LAUNDERING OFFENSE.

10         DOES THE GOVERNMENT OBJECT TO THAT ADVISORY

11   GUIDELINE DETERMINATION?

12         MR. BRADSHER:  NO, YOUR HONOR.

13         THE COURT:  DOES THE DEFENSE OBJECT TO THAT

14   ADVISORY GUIDELINE DETERMINATION?

15         MR. SILVERMAN:  NO, SIR.

16         THE COURT:  ALL RIGHT.  THERE IS A MOTION FROM

17   THE GOVERNMENT UNDER SECTION 5K1.1.

18         AT THIS TIME, THE COURT WILL HEAR FROM MR.

19   BRADSHER ON THAT MOTION.

20         MR. BRADSHER:  THANK YOU, YOUR HONOR.

21         YOUR HONOR, MR. ALSTON'S COOPERATION BEGAN

22   BACK IN JULY, 2010.  AT THAT TIME, MR. BEERS (PHONETIC)

23   -- WHO IS AN AGENT WITH THE INTERNAL REVENUE SERVICE, WHO

24   IS WITH ME HERE TODAY, DECIDED THAT HE WOULD GO AND MEET

25   WITH MR. ALSTON WHILE HE WAS SERVING A STATE SENTENCE FOR

1  POSSESSION OF A FIREARM BY A FELON.

2          HE WENT OUT THERE TO SEE HIM, YOUR HONOR,

3  BECAUSE HE WAS INVOLVED IN AN INVESTIGATION AT THAT TIME

4  OF AN INDIVIDUAL WHO WAS OPERATING A USED CAR BUSINESS,

5  AND THAT INDIVIDUAL'S PART OF THE USED CAR BUSINESS WOULD

6  LOCATE VERY EXPENSIVE LUXURY VEHICLES FOR INDIVIDUALS.

7          AND IN THE PROCESS OF PROVIDING THOSE LUXURY

8  VEHICLES FOR INDIVIDUALS, HE WAS MONEY LAUNDERING THEIR

9  DRUG PROCEEDS.

10          MR. BEERS HAD COME TO FOCUS ON HIM, YOUR

11  HONOR, BECAUSE INDIVIDUALS, OTHER INDIVIDUALS WHO WERE

12  COOPERATING, AND GAVE INFORMATION ABOUT PEOPLE THAT WERE

13  INVOLVED IN THE PURCHASE OF THESE LUXURY AUTOMOBILES WITH

14  DRUG PROCEEDS, AND HE DECIDED TO GO SEE MR. ALSTON.

15          HE ALSO REVIEWED RECORDS FROM THAT BUSINESS

16  AND HE DECIDED TO SEE HIM THERE.  MR. ALSTON COOPERATED

17  AT THAT TIME, YOUR HONOR.  HE TOLD MR. BEERS THAT HE HAD,

18  IN FACT, PURCHASED TWO MERCEDES BENZ FROM THAT INDIVIDUAL

19  AND HE HAD USED DRUG PROCEEDS TO DO THAT, AND THAT THAT

20  INDIVIDUAL HAD HELPED HIM DO THAT BY DUMMYING UP SOME

21  EMPLOYMENT RECORDS.

22          HE WENT ON, YOUR HONOR, TO GIVE MORE

23  INFORMATION ABOUT THE INDIVIDUAL.  HE NAMED SOME OTHER

24  INDIVIDUALS WHO HAD ALSO DONE THAT.  AND HE GAVE THE

25  LOCATION OF THREE VEHICLES THAT HE HAD AT THAT TIME.

1    THEY WERE NOT VEHICLES THAT WERE TITLED IN HIS NAME.  IN

2    FACT, HE GAVE US THE INFORMATION AND WE WEREN'T LIKELY TO

3    FINDS THOSE VEHICLES, AND WE WERE ABLE TO SEIZE THOSE

4    VEHICLES AND TAKE THEM AS ASSETS AS WELL.

5            EVERYTHING AT THAT TIME, YOUR HONOR, LOOKED

6    PRETTY GOOD FOR MR. ALSTON.  WE HAD DECIDED MR. ALSTON

7    WOULD BE -- AT SOME POINT IN TIME, HE WAS GOING TO HAVE

8    TO BECOME A PART OF THE INVESTIGATION AND WE DECIDED AT

9    SOME POINT HE WAS GOING TO BE CHARGED WITH HIS

10    PARTICIPATION IN THAT MONEY LAUNDERING.

11            BUT THINGS DIDN'T GO AS WE HAD ANTICIPATED,

12    YOUR HONOR.  AS YOU CAN SEE IN THE PRESENTENCE REPORT,

13    EVEN THOUGH WE HAD SEEN HIM IN JULY OF 2010 AND WE GAVE

14    HIM THE OPPORTUNITY TO GIVE THAT COOPERATION ABOUT MR.

15    ALSTON.  HE DIDN'T GIVE ALL THE INFORMATION HE COULD HAVE

16    AT THAT TIME.

17            AND UNFORTUNATELY FOR HIM, WHEN HE GOT OUT AND

18    IT APPEARS, YOUR HONOR, JUST ABOUT THE TIME THAT HE WAS

19    DISCHARGED ON NOVEMBER 8, 2010, HE HAD PUT ASIDE A VERY

20    CONSIDERABLE AMOUNT OF MONEY.  HIS INTENT WAS TO GO RIGHT

21    BACK INTO THE DRUG BUSINESS, AND HE DID.

22            HE CONTACTED A SOURCE IN TEXAS IN ORDER TO

23    ORDER COCAINE.  AND UNFORTUNATELY, OR FORTUNATELY FOR LAW

24    ENFORCEMENT, HE CONTACTED AN INDIVIDUAL WHO WAS

25    COOPERATING WITH THE DRUG ENFORCEMENT ADMINISTRATION IN

1    TEXAS.  AND IT LED TO A SEIZURE OF ABOUT $100,000 OF

2    MONEY WHEN MR. ALSTON WENT DOWN TO TEXAS TO TRY TO PICK

3    UP THAT COCAINE.

4            HE WAS NOT ARRESTED AT THE TIME.  HE CAME BACK

5    TO NORTH CAROLINA.  HE CAME BACK TO NORTH CAROLINA, YOUR

6    HONOR, AND HE HAD DECIDED THAT HE WAS GOING TO CONTINUE

7    TO TRY TO GET DRUGS FROM THE SOURCE IN TEXAS, BUT HE

8    WASN'T GOING TO TRAVEL BACK DOWN TO TEXAS.

9            AND SO DURING THE COURSE OF TIME BETWEEN THAT

10   NOVEMBER DATE AND HIS ARREST UP TO ABOUT JANUARY 25, HE

11   WAS IN NEGOTIATIONS TO HAVE INDIVIDUALS FROM TEXAS COME

12   UP TO NORTH CAROLINA AND BRING DRUGS UP TO HIM, ABOUT 18

13   KILOS.

14           AND THE DEA FROM TEXAS AND THE DEA FROM THE

15   MIDDLE DISTRICT IN GREENSBORO SET UP A REVERSAL OPERATION

16   AND THEY WERE ABLE TO MAKE AN ARREST OF MR. ALSTON AFTER

17   THEY MET WITH HIM.

18           YOUR HONOR, AT THAT TIME MR. ALSTON COOPERATED

19   AGAIN WITH LAW ENFORCEMENT.  HE GAVE A LOT OF INFORMATION

20   ABOUT PEOPLE THAT HE WAS INVOLVED WITH IN THE DRUG

21   BUSINESS THAT HE HADN'T PREVIOUSLY GIVEN.  HE TALKED

22   ABOUT PEOPLE IN THE SANFORD AREA AND HE TALKED ABOUT

23   PEOPLE IN THE GREENSBORO AREA AND HE TALKED ABOUT PEOPLE

24   IN THE TEXAS AREA.

25           HE ALSO -- THEY SEIZED ABOUT OVER $200,000

1   FROM HIM AT THAT TIME, YOUR HONOR.  IT WAS NEARLY

2   $300,000 THAT THEY TOOK FROM HIM.

3             AND HE ALSO GAVE SOME INFORMATION ABOUT

4   ADDITIONAL DRUGS THAT HE HAD THAT THEY HAD NOT DISCOVERED

5   AND HE TURNED OVER A KILO OF COCAINE THAT HE HAD IN HIS

6   POSSESSION AT THAT TIME.

7             YOUR HONOR, TEXAS BECAME AWARE OF THE FACT

8   THAT IN LATE JANUARY WE HAD INDICTED HIM FOR MONEY

9   LAUNDERING CHARGES, SO THEY WERE NOTIFIED OF THAT.  THEY

10  ACTUALLY WANTED TO HAVE HIM GO BACK DOWN TO TEXAS WITH

11  THEM BECAUSE THE INFORMATION THAT HE HAD PROVIDED

12  REGARDED AN INDIVIDUAL WHO WAS A TARGET OF THEIR

13  INVESTIGATION AND PRETTY SIGNIFICANT SOURCE OF COCAINE.

14            THE INFORMATION THAT HE PROVIDED THEY THOUGHT

15  WAS CREDIBLE, NOT ONLY BECAUSE THEY HAD AN INVESTIGATION

16  GOING ON, BUT BECAUSE THE INDIVIDUALS THAT HE HAD

17  CONTACTED WERE ALSO COOPERATING, SO THEY WANTED HIM TO

18  WORK.

19            UNFORTUNATELY, YOUR HONOR, WHEN WE REVIEWED

20  HIS RECORD AND WE KNEW THAT HE HAD ALREADY BEEN

21  INCARCERATED AND STARTED THE COOPERATION WITH US, WE

22  DIDN'T BELIEVE A PLAN COULD BE SET UP TO LET HIM DO THAT.

23            AND SO WE MOVED FORWARD, YOUR HONOR, ON THE

24  INDICTMENT, AND WE BROUGHT HIM IN TO THE FEDERAL SYSTEM,

25  AND AS SOON AS MR. SILVERMAN REPRESENTED HIM, HE WAIVED

1    DETENTION, SO HE WAS NOT ALLOWED TO GO BACK TO TEXAS.

2         SINCE THAT TIME, MR. BEERS WENT BACK TO SEE

3    HIM ALMOST IMMEDIATELY, AND THIS WAS, I BELIEVE, PROBABLY

4    A VERY SHORT PERIOD OF TIME THAT THAT DECISION WAS MADE

5    TO WAIVE THAT.

6         WE TALKED TO MR. SILVERMAN AND SAID AT THAT

7    POINT IN TIME HE WAS NOT GOING TO BE FACING ONLY A MONEY

8    LAUNDERING CHARGE, BUT ALSO NOW A DRUG CHARGE, AND IT WAS

9    GOING TO BE A 10 TO LIFE DRUG CHARGE, AND ALREADY THERE

10   WAS SOME INFORMATION FROM THE INVESTIGATION, THE OCDETF

11   INVESTIGATION THAT WE HAD GOING ON IN THE WILMINGTON AREA

12   AND ONE THAT HAD SPREAD INTO THE SANFORD AREA.

13        WE MET WITH -- MR. BEERS MET WITH HIM

14   INITIALLY BECAUSE HE WANTED SOME ADDITIONAL INFORMATION

15   FROM HIM REGARDING WHAT HIS ASSETS WERE BECAUSE OBVIOUSLY

16   HE WAS INVOLVED IN AND CONTINUED TO BE INVOLVED IN THE

17   DRUG BUSINESS.  AND AT THE TIME WE HE WENT TO SEE HIM, HE

18   IMMEDIATELY TURNED OVER ABOUT $10,000 WORTH OF JEWELRY.

19        HE ALSO TOLD US ABOUT ANOTHER VEHICLE WE HAD

20   NO IDEA ABOUT.  IT WAS A VEHICLE THAT HE HAD SENT DOWN TO

21   A BUSINESS IN ARKANSAS.  THIS BUSINESS RESTORES VEHICLES

22   ALL ACROSS THE COUNTRY.  HE HAD PAID ABOUT $256,000 TO

23   HAVE A VEHICLE RESTORED THERE.

24        MR. BEERS WENT DOWN AND HE WAS ABLE TO OBTAIN

25   THAT VEHICLE THAT MR. ALSTON HAD USED DRUG PROCEEDS TO

1   HAVE RESTORED.  THAT ALSO LEAD MR. BEERS TO OPEN AN

2   INVESTIGATION OF THOSE INDIVIDUALS DOWN THERE, AND THAT

3   INVESTIGATION IS ONGOING, YOUR HONOR, WITH THE REGARD TO

4   THE FACT THAT THEY HAVE ACCEPTED DRUG PROCEEDS FOR THE

5   VEHICLE.

6           AGAIN, AFTER SOME HESITATION ON THE PART OF

7   THOSE INDIVIDUALS HAVING THE CAR, WE WERE ABLE TO GET

8   THAT CAR AND BRING IT BACK IN.

9           HE ALSO GAVE INFORMATION, YOUR HONOR, TO OTHER

10  INVESTIGATORS ABOUT -- AND I INDICATED TO YOU THAT THERE

11  WAS AN INVESTIGATION GOING ON IN THE PENDER AND

12  WILMINGTON AREA.  HE GAVE INFORMATION ABOUT AT LEAST

13  THREE INDIVIDUALS WHO WERE TARGETED FOR INVESTIGATION.

14          ONE OF THOSE INDIVIDUALS WHO HAD BEEN A

15  COURIER FOR MR. ALSTON WAS NOT KNOWN BY LAW ENFORCEMENT

16  AT THAT TIME.  HE WAS INTERVIEWED ABOUT THAT.  HE

17  IDENTIFIED THAT INDIVIDUAL.  AND OFFICERS APPROACHED THAT

18  INDIVIDUAL WHO CORROBORATED INFORMATION THAT WAS PROVIDED

19  BY MR. ALSTON AND COOPERATED WITH LAW ENFORCEMENT.

20          WE ANTICIPATE SHORTLY THAT THAT PERSON IS

21  GOING TO ENTER INTO A PLEA AGREEMENT WITH THE GOVERNMENT

22  AND CONTINUE TO COOPERATE BY PROVIDING INFORMATION TO

23  DRUG INVESTIGATORS FOR -- BY PROVIDING INFORMATION TO THE

24  DRUG INVESTIGATION OF OTHER INDIVIDUALS IN THAT AREA.

25          TWO OTHER INDIVIDUALS WERE TARGETED, YOUR

HONOR, AND HE GAVE VALUABLE INFORMATION ABOUT THEM.  HE
HAS AGREED TO TESTIFY AGAINST ANY OF THEM AS WELL AS
TESTIFY AGAINST MR. GOODMAN, THE INDIVIDUAL WHO IS THE
OWNER OF THE CAR DEALERSHIP.  HE HAS BEEN INDICTED IN THE
EASTERN DISTRICT OF NORTH CAROLINA.  HIS TRIAL IS COMING
UP, I BELIEVE, IN LATE FEBRUARY OR MARCH.

FINALLY, YOUR HONOR --

THE COURT:  WHO HAS THAT CASE?

MR. BRADSHER:  THAT IS MY CASE, YOUR HONOR.

THE COURT:  I MEAN WHAT JUDGE HAS IT?

MR. BRADSHER:  YOUR HONOR, THAT IS JUDGE
FLANAGAN THAT HAS THAT MATTER.

THIS CASE KIND OF STRADDLES THREE OCDETF
INVESTIGATIONS.  THAT WAS A BRANCH OF THE OCDETF
INVESTIGATION.  WHEN WE FIRST BEGAN ON IT, THERE WERE TWO
OTHER DRUG INVESTIGATIONS THAT WERE OCDETF INVESTIGATIONS
THAT MR. ALSTON GAVE INFORMATION ABOUT BECAUSE THEY WERE
IN THE WILMINGTON AREA AND HE WAS A SOURCE OF SUPPLY AND
ALSO IN THE SANFORD AREA WHERE HE WAS A SOURCE OF SUPPLY.

IN REGARD TO THE SANFORD AREA, YOUR HONOR,
WHERE HE HAD BEEN BORN AND RAISED, HE ALSO MET WITH AN
INVESTIGATOR FROM IMMIGRATION AND CUSTOMS ENFORCEMENT,
AND WE WERE ABLE TO GET AN ORDER OF THE COURT TO ALLOW
HIM TO LEAD THEM TO SEVERAL STASH HOUSES IN THAT AREA.
THEY WERE AWARE OF ONE OF THEM, BUT NOT ANOTHER STASH

1    HOUSE THAT HE IDENTIFIED.

2         HE HAS GIVEN INFORMATION ABOUT THE SOURCE OF

3    SUPPLY THAT THEY ARE TARGETING, YOUR HONOR, AND WHILE

4    THAT HASN'T LED TO ANY ARRESTS AT THIS TIME, AGAIN, IT'S

5    INFORMATION THAT MAY BE USEFUL UPON THE INDICTMENT OF

6    THAT INDIVIDUAL AND HE HAS BEEN WILLING TO TESTIFY ABOUT

7    THE INFORMATION HE PROVIDED THERE.

8         FINALLY, YOUR HONOR, THE INDIVIDUALS FROM

9    TEXAS -- I BELIEVE YOU SAW IN ONE OF THE MOTIONS TO

10   CONTINUE -- WE HAD ANTICIPATED THEY WOULD BE BACK UP TO

11   SEE HIM.  AT THIS TIME, THEY HAVE NOT INTERVIEWED HIM,

12   BUT THEY THINK THAT THE INFORMATION PROVIDED BY HIM IS

13   ACCURATE.  THEY ARE PURSUING AN INVESTIGATION THERE.

14        I HAVE BEEN INFORMED BY AN ASSISTANT UNITED

15   STATES ATTORNEY THERE THAT THEY INTEND TO INTERVIEW HIM

16   AGAIN WITH REGARD TO A CASE THAT THEY ARE PURSUING THERE.

17        THE COURT:  THANK YOU, MR. BRADSHER.

18        MR. BRADSHER:  YES, SIR.

19        THE COURT:  IN LIGHT OF MR. ALSTON'S

20   SUBSTANTIAL ASSISTANCE, I WILL GRANT THE MOTION.  THAT

21   DOESN'T MEAN THAT I WILL AGREE WITH WHATEVER

22   RECOMMENDATION THE GOVERNMENT ULTIMATELY MAKES.

23        MR. ALSTON HAS A VERY TROUBLING, TO PUT IT

24   CHARITABLY, CRIMINAL HISTORY.

25        I WILL HEAR FROM MR. SILVERMAN ON THE 3553(A)

1    FACTORS.

2              MR. SILVERMAN:  YOUR HONOR, I AM NOT EVEN

3    GOING TO TRY TO TALK YOU OUT OF YOUR ASSESSMENT OF MR.

4    ALSTON'S CRIMINAL HISTORY.  I THINK IT WOULD BE AN

5    EXERCISE IN FUTILITY AND PROBABLY INSULTING TO THE COURT,

6    BUT I DO WANT TO TALK TO YOU A LITTLE BIT, IF I MIGHT,

7    ABOUT THE FACTORS YOU NEED TO CONSIDER IN ALL OF THESE

8    MATTERS AND LET YOU KNOW A LITTLE BIT ABOUT THOMAS AND

9    WHERE HE IS IN HIS LIFE TODAY.

10             ABOUT A YEAR AGO NOW, WE DROVE UP HERE TO THE

11   FEDERAL COURTHOUSE.  AGENT BEERS HAD CALLED THOMAS AND

12   HAD TOLD HIM THAT THEY HAD THE MONEY LAUNDERING

13   INDICTMENTS AND WANTED HIM TO TURN HIMSELF IN.  HE

14   CONTACTED ME AND WANTED MY HELP.

15             AND I HAD NOT REPRESENTED THOMAS BEFORE IN ANY

16   OF THOSE MATTERS YOU SEE IN THE SENTENCING REPORT.  AND

17   ACTUALLY, I HAD COME TO KNOW THOMAS CASUALLY.  HE LIVED

18   KIND OF ACROSS THE HALL FROM MY MOTHER-IN-LAW IN AN

19   APARTMENT COMPLEX IN SANFORD, AND TO BE CANDID WITH THE

20   COURT, WE HAD MOVED BY MOTHER-IN-LAW DOWN FROM NEW

21   JERSEY.  SHE WAS IN HER MID-80'S.  AND, YOU KNOW, SANFORD

22   IS A SMALL TOWN.  I HAVE BEEN PRACTICING THERE A LONG

23   TIME.  I KNOW A LOT OF FOLKS.

24             AND I SAW THOMAS THERE AND IN THE BACK OF MY

25   MIND, I HAD A LITTLE TREPIDATION ABOUT WHAT THIS WAS ALL

1    ABOUT, BUT HE TURNED OUT TO BE A VERY NICE AND RESPECTFUL

2    NEIGHBOR WHO LOOKED OUT FOR THE ELDERLY WOMAN ACROSS THE

3    HALL.  WE EXCHANGED PLEASANTRIES.

4         HE CAME TO ME -- AS YOUR HONOR KNOWS, YOU

5    DON'T SEE ME IN YOUR COURT REPRESENTING BIG TIME DRUG

6    DEALERS -- AND HE CAME NOT TO MOUNT A VIGOROUS DEFENSE

7    AND HIRE A BIG TIME LAWYER, BUT REALLY TO TRY TO CHANGE

8    HIS LIFE.

9         HE CAME TO MY OFFICE ON FEBRUARY 4 OF LAST

10   YEAR TO DRIVE UP HERE, AND WE TOOK THE RIDE FROM SANFORD

11   TO RALEIGH.  WE TALKED ABOUT HIS PREDICAMENT, THE THINGS

12   HE HAD DONE, AND HE WANTED TO START TO ATONE.  HE WANTED

13   TO START TO LIVE A DIFFERENT LIFE AND HE WANTED TO DO THE

14   LIMITED THINGS THAT HE COULD DO AT THAT POINT IN HISTORY.

15        HE UNDERSTOOD HE COULDN'T UNRING THE BELL.  HE

16   COULDN'T CHANGE WHAT HAPPENED.  BUT HE DID WANT TO DO

17   WHATEVER IT WAS THAT HE COULD TO TRY TO REMEDY THE THINGS

18   HE HAD DONE WRONG IN THE PAST.

19        WE CAME UP HERE.  WE WERE INTERVIEWED BY AGENT

20   BEERS THAT VERY MORNING ON FEBRUARY 4.  WE WERE IN

21   COMMUNICATION WITH A DEA AGENT IN TEXAS ABOUT THE MATTERS

22   THAT MR. BRADSHER TOLD YOU ABOUT.  THEY WERE KIND ENOUGH

23   TO COMMUNICATE WITH THE U.S. ATTORNEYS OFFICE I THINK FOR

24   THE WESTERN DISTRICT OF TEXAS ABOUT TRYING TO ORGANIZE

25   THINGS.  AND THOMAS WAS READY, WILLING, AND ABLE TO DO

1    WHATEVER HE COULD BY WAY OF INFORMATION TO ASSIST IN

2    TEXAS AND TO GO TO TEXAS IF THAT COULD HAVE BEEN

3    ARRANGED.  THAT DIDN'T HAPPEN.

4           I AM SATISFIED AND I BELIEVE MR. BRADSHER IS

5    SATISFIED THAT COULD THAT HAVE BEEN ARRANGED, THAT THOMAS

6    WOULD HAVE GONE.

7           I KNOW YOUR HONOR HAS HAD A CHANCE TO REVIEW

8    THE FILE.  IF YOU WILL NOTE ONE OF THE SEALED MOTIONS, IT

9    MAKES REFERENCE TO THE TYPE OF PEOPLE THAT WERE INVOLVED

10   IN TEXAS, AND I AM SATISFIED HE WOULD HAVE GONE.

11          HE HAS SPOKEN WITH EVERY LAW ENFORCEMENT

12   OFFICER THAT HAS COME TO SPEAK WITH HIM SINCE HE HAS BEEN

13   DETAINED FOR ABOUT A YEAR NOW.  HE HAS BARED HIS SOUL

14   ABOUT HIS ENTIRE LIFE, TALKED ABOUT PEOPLE THAT HE HAS A

15   GREAT DEAL OF FONDNESS, LOVE AND AFFECTION FOR, AND TRIED

16   TO DO WHAT LITTLE HE COULD DO TO START TO MAKE THE RECORD

17   RIGHT.

18          AND SO I ASK YOU TO TAKE THAT INTO

19   CONSIDERATION AS YOU WEIGH WHAT TO DO WITH MR. ALSTON

20   HERE TODAY.

21          AND I WANT TO TALK TO YOU ABOUT THAT CAR FOR A

22   MINUTE.  SOMETIMES I THINK THAT THE CAR IN ARKANSAS --

23   SOMETIMES WE THINK OF DRUG DEALERS AS MASTERMINDS AND

24   CLEVER FOLKS, AND I DON'T MEAN TO SPEAK ILL OF THOMAS,

25   BUT THOMAS HAS DONE THINGS THAT WERE FAR FROM BEING A

MASTERMIND. AND IN FACT, I WOULD CALL THEM INCREDIBLY
STUPID, INCLUDING SHIPPING A QUARTER OF A MILLION DOLLARS
TO SOME UNKNOWN PEOPLE IN ARKANSAS TO RESTORE A CAR.

AND AS THAT CAR HAS BEEN DESCRIBED TO ME BY
AGENT BEERS, IT WAS AT BEST HALFWAY COMPLETED AND
PROBABLY WOULDN'T HAVE BROUGHT $20,000 HAD YOU AUCTIONED
IT IN ITS AS IS CONDITION. HE GROSSLY OVERPAID FOR MOTOR
VEHICLES THAT HE PURCHASED FROM THE USED CAR DEALER IN
LILLINGTON THAT YOU HEARD ABOUT.

SO I DON'T KNOW THAT HE IS A MASTERMIND. I
DON'T THINK THAT HE IS A GUY WHO THAT WHEN HE IS
INCARCERATED IS GOING TO BE RUNNING A NETWORK OR DOING
ANYTHING FROM FEDERAL PRISON THAT WOULD IN ANY WAY BE
TROUBLING TO ANYONE.

THOMAS'S GRANDMOTHER IS SEATED THERE, HIS MOM,
HIS BROTHER PATRICK AND TWO OF HIS CHILDREN ARE HERE
TODAY. HE IS INCREDIBLY CLOSE TO HIS FAMILY AND TERRIBLY
ASHAMED OF THE IMPACT HE HAS HAD ON HIS GRANDMOTHER WHO
YOU SAW IN THE REPORT REALLY RAISED HIM AND HIS MOM.

HE IS GOING TO BE 42 IN MARCH. AND YOU KNOW,
WHEN I WAS IN MY MID-20'S, AGE SEEMED TO BE KIND OF
IRRELEVANT. AS YOU GET OLDER, YOU START TO REALIZE YOU
HAVE LESS TIME.

AND SO WHEN I THINK WE TALK ABOUT DETERRENCE,
WE TALK ABOUT WHAT I CALL AN ASCENDING MESSAGE TO OTHER

1    PEOPLE THAT THEY NOT DO THIS, THAT THOMAS ALSTON NEED NOT

2    DO THIS TYPE OF THING ANYMORE, PROTECTION OF THE PUBLIC.

3    AND WHATEVER IT IS YOU DO, I BELIEVE WILL DETER PEOPLE,

4    WILL SEND A MESSAGE THAT THE UNITED STATES GOVERNMENT

5    TAKES THESE MATTERS EXTRAORDINARILY SERIOUSLY.  IT WILL

6    PROTECT FOLKS.  IT WILL GIVE THOMAS AN OPPORTUNITY TO

7    LEARN SKILLS THAT HE NEVER LEARNED.

8           IF YOU HAVE LOOKED AT HIS EMPLOYMENT HISTORY,

9    IT'S SPORADIC.  HE DID NOT DO TERRIBLY WELL AT LEE SENIOR

10   HIGH SCHOOL.  I THINK HE WAS IN THE BOTTOM QUARTER OF HIS

11   CLASS.  SO HE IS GOING TO HAVE SUFFICIENT TIME TO DO

12   THOSE THINGS.

13          SO WE ASK YOU TO CRAFT A SENTENCE THAT GIVES

14   THOMAS AN OPPORTUNITY TO COME OUT AT A LATER POINT IN HIS

15   LIFE.  BUT HE IS NOT GOING TO BE A THREAT TO ANYBODY.

16   BUT A SENTENCE THAT RECOGNIZES THE EFFORTS THAT HE HAS

17   MADE TO TRY TO ATONE FOR THE WRONGS THAT HE DID, AND YOU

18   KNOW, WE ARE ASKING YOU TO CONSIDER SOMETHING IN THE 20

19   YEAR, 240 MONTHS RANGE.

20          I REALIZE THAT IS A SUBSTANTIAL DEPARTURE FROM

21   WHERE WE ARE IN THE ADVISORY GUIDELINES.  BY THE SAME

22   TOKEN, IF HE SERVES A SENTENCE OF AROUND 20 YEARS, THAT

23   MAKES HIM 62 YEARS OLD.  SOME OF THE FOLKS THAT HE KNOWS

24   AND LOVES WILL BE GONE.  HIS FAMILY WILL HAVE MOVED ON,

25   YOU KNOW, OTHER THAN THEIR BOND FOR HIM.  CHILDREN WILL

1    HAVE GROWN UP WITHOUT HIM.  SO I DON'T THINK THERE IS

2    ANYTHING THAT TRIVIALIZES THE NATURE OR EXTENT OF THE

3    CRIMES OR THE PRIOR CRIMINAL HISTORY.

4              AT LEAST WHAT I READ, MOST FOLKS WHO GET TO BE

5    IN THAT AGE RANGE CEASE TO BE ANY TYPE OF VIABLE THREAT

6    TO THE VAST MAJORITY OF THE POPULATION.

7              WE APPRECIATE YOU GRANTING THE GOVERNMENT'S

8    MOTION FOR A DEPARTURE, AND I WILL BE HAPPY TO ANSWER ANY

9    QUESTIONS THAT YOUR HONOR MIGHT HAVE.

10             THE COURT:  I DON'T HAVE ANY.  I THANK YOU FOR

11   YOUR PRESENTATION, MR. SILVERMAN.

12             AT THIS TIME, I WILL RECOGNIZE MR. ALSTON IF

13   YOU WOULD LIKE TO MAKE A STATEMENT, SIR.

14             THE DEFENDANT:  HOW ARE YOU DOING?  I

15   APOLOGIZE TO THE COURT AND TO THE UNITED STATES FOR MY

16   ACTIONS.

17             THE COURT:  THANK YOU, MR. ALSTON.

18             MR. BRADSHER.

19             MR. BRADSHER:  THANK YOU, YOUR HONOR.

20             YOUR HONOR, WE BEGAN BY SAYING THAT THE

21   ADVISORY GUIDELINE RANGE, I BELIEVE, OFFERS GOOD ADVICE

22   TO THE COURT THAT BEGINNING THIS PROCESS YOU SHOULD

23   CERTAINLY BE LOOKING AT A RANGE OF AT LEAST 30 YEARS UP

24   TO LIFE IMPRISONMENT, AND HE FINDS HIMSELF IN A FEDERAL

25   COURTROOM TODAY HAVING REACHED THE HIGHEST LEVEL OF

1    CRIMINAL HISTORY AS A CAREER OFFENDER.

2              YOU BEGAN YOUR REMARKS, YOUR HONOR, BY SAYING

3    THAT HE HAD A VERY BAD CRIMINAL RECORD, AND THAT IS TRUE.

4    HE HAS A VERY CLEAR HISTORY OF ASSAULTIVE BEHAVIOR.  HE

5    HAS BEEN A DANGEROUS INDIVIDUAL.  HE HAD TWO PRIOR

6    CONVICTIONS FOR DRUG OFFENSES, FELONY DRUG OFFENSES, AND

7    UNFORTUNATELY, YOUR HONOR, HE HAS BEEN TREATED VERY

8    LENIENTLY BY THE COURT.

9              I KNOW THAT WHEN YOU WERE LOOKING OVER THE

10   CRIMINAL RECORD, YOU SAW HOW MANY TIMES HE WAS GIVEN

11   SUSPENDED SENTENCES.  HE, IT LOOKS TO ME -- AND I COULD

12   BE WRONG, BUT IT LOOKS TO ME LIKE THERE WERE TWO PERIODS

13   OF TIME THAT HE SPENT SOME TIME IN JAIL, A PERIOD ABOUT A

14   YEAR, AND THEN MOST RECENTLY FOR A FELON IN POSSESSION,

15   MAYBE A YEAR AND A HALF OR A LITTLE LESS THAN THAT, SO

16   HIS RECORD IS VERY BAD COMING TO THIS COURTROOM TODAY.

17             AND I WILL ECHO WHAT MR. SILVERMAN SAID ABOUT

18   HIS EMPLOYMENT FOR A 42 YEAR OLD MAN.  IT'S NOT VERY

19   IMPRESSIVE.  AND CERTAINLY IF HE WAS SUSTAINING

20   HIMSELF -- AND IT WOULD SEEM CLEAR THAT HE IS DOING THAT

21   BY OTHER THAN LEGITIMATE WORK.

22             HE IS, YOUR HONOR, A VERY SIGNIFICANT DRUG

23   DEALER AND I THINK THAT IS CLEAR WHEN A PROSECUTOR MOVES

24   FOR A REDUCTION IN A CASE THAT HE HAS ASSISTED IN THREE

25   ORGANIZED CRIME DRUG ENFORCEMENT TASK FORCE CASES.  HE

1    HAS HAD A BIG IMPACT ON NOT ONLY THE EASTERN DISTRICT,

2    BUT THE MIDDLE DISTRICT.

3              AND I WISH HE WERE HERE TODAY, YOUR HONOR,

4    STARTING WITH HIS COOPERATION THAT HE GAVE BACK IN JULY,

5    BUT THAT COOPERATION ASSISTED IN AN INVESTIGATION, YOUR

6    HONOR.  AFTER HIS ARREST, AFTER HE WENT BACK IN, NOT

7    BREAKING THE PATTERN, HE DID COOPERATE AND I BELIEVE,

8    YOUR HONOR, BASED ON THE INFORMATION I HAVE RECEIVED NOT

9    ONLY FROM MR. BEERS, BUT THE OTHER INVESTIGATORS, THAT

10   THAT IS A BREAK FROM THE PATTERN.  I DON'T THINK HE HAS

11   REALLY DONE THAT AND I THINK THAT WAS CLEAR BECAUSE HE

12   KEPT THAT MONEY IN RESERVE WHEN HE WENT INTO THE STATE

13   SYSTEM.

14              THESE ARE DIFFICULT CASES EVEN FOR

15   PROSECUTORS, YOUR HONOR, BECAUSE I WOULD LIKE TO -- I DO

16   HAVE A RECOMMENDATION FOR THE COURT.  IT IS MADE

17   DIFFICULT BY THOSE THINGS THAT YOU HAVE ALREADY MENTIONED

18   AND BY THE THINGS THAT I HAVE JUST SAID.

19              OBVIOUSLY, A SIGNIFICANT SENTENCE IS NECESSARY

20   IN THIS CASE.  I DO THINK THAT THE SENTENCE HAS TO

21   CONTEMPLATE THE FACT THAT HE WILL HAVE SOME OPPORTUNITIES

22   THERE TO GET AN EDUCATION AND THAT HE HASN'T HAD, AND

23   MAYBE GET VOCATIONAL TRAINING THAT MAY HELP HIM.

24              BUT, YOUR HONOR, I THINK THAT A SENTENCE, A

25   SIGNIFICANT SENTENCE, HAS TO BE IMPOSED, AND I WOULD

1    RECOMMEND, YOUR HONOR, THAT IN THIS CASE THAT YOU GIVE

2    HIM A SENTENCE OF NO LESS THAN 288 MONTHS.

3            THE COURT:  ALL RIGHT, MR. ALSTON.

4            THE COURT RECOGNIZES ITS OBLIGATION TO IMPOSE

5    A SENTENCE SUFFICIENT, BUT NOT GREATER THAN NECESSARY, TO

6    COMPLY WITH THE PURPOSES SET FORTH IN THE STATUTE.

7            THE COURT HAS CONSIDERED ALL ARGUMENTS THAT

8    MR. SILVERMAN HAS MADE ON YOUR BEHALF.  THE COURT HAS

9    CONSIDERED YOUR STATEMENT.  THE COURT HAS CONSIDERED THE

10   POSITION OF THE UNITED STATES, INCLUDING THE SUBSTANTIAL

11   ASSISTANCE THAT YOU DID RENDER TO THE UNITED STATES IN

12   THE VARIOUS INVESTIGATIONS THAT MR. BRADSHER HAS

13   DISCUSSED.  THE COURT HAS CONSIDERED THE ADVISORY

14   GUIDELINE RANGE.

15           AMONG OTHER THINGS, THE COURT IS TO CONSIDER

16   THE NATURE AND CIRCUMSTANCES OF THE OFFENSE, AND THE

17   HISTORY AND CHARACTERISTICS OF THE DEFENDANT, THE NEED

18   FOR THE SENTENCE IMPOSED TO REFLECT THE SERIOUSNESS OF

19   THE OFFENSE, TO PROMOTE RESPECT FOR THE LAW, AND TO

20   PROVIDE JUST PUNISHMENT, THE NEED FOR THE SENTENCE

21   IMPOSED TO DETER OTHERS WHO MIGHT CHOOSE TO ENGAGE IN THE

22   BEHAVIOR THAT BRINGS YOU HERE, THE NEED FOR THE SENTENCE

23   IMPOSED TO PROTECT THE PUBLIC FROM FURTHER CRIME BY YOU,

24   THE NEED FOR THE SENTENCE IMPOSED TO PROVIDE YOU WITH

25   NEEDED EDUCATIONAL OR VOCATIONAL TRAINING, MEDICAL CARE,

1    OR OTHER CORRECTIONAL TREATMENT IN THE MOST EFFECTIVE

2    MANNER.

3            THE STATUTE LISTS A NUMBER OF OTHER FACTORS.

4    I HAVE CONSIDERED ALL OF THEM, ALTHOUGH I WON'T MENTION

5    EACH ONE INDIVIDUALLY.

6            AS FOR THE NATURE AND CIRCUMSTANCES OF THE

7    OFFENSE, YOU DID CONSPIRE TO DISTRIBUTE AND POSSESS WITH

8    THE INTENT TO DISTRIBUTE 5 KILOGRAMS OR MORE OF COCAINE.

9    YOU DID ENGAGE IN MONEY LAUNDERING.  THE DETAILS ARE ALL

10   SET FORTH IN THE PRESENTENCE REPORT AND REFLECTED IN THE

11   CRIMINAL INFORMATION TO WHICH YOU PLEADED GUILTY.

12           THE CONSPIRACY CONCERNING THE COCAINE DID TAKE

13   PLACE OVER A LONG PERIOD OF TIME.  CERTAINLY THE MONEY

14   LAUNDERING BEHAVIOR TOOK PLACE OVER A LONG PERIOD OF

15   TIME.  IT IS SERIOUS CONDUCT.  YOU WERE A MAJOR COCAINE

16   TRAFFICKER.  NO TWO WAYS ABOUT IT.  SOMETIMES THIS COURT

17   SEES FOLKS AT A MUCH LOWER LEVEL THAN YOU, BUT YOU WERE

18   MOVING A LOT OF COCAINE.

19           AND PEOPLE ARE DRUG DEALERS BECAUSE OF GREED.

20   IT'S A HIGH RISK, HIGH REWARD BUSINESS.  YOU MAKE A LOT

21   OF MONEY.  YOU PAY FOR IT WHEN YOU GET CAUGHT WITH YOUR

22   LIBERTY.  AT LEAST WHEN YOU COME TO FEDERAL COURT.

23           AS YOU LEARNED, UNFORTUNATELY, IN STATE COURT,

24   A LOT OF TIMES IN STATE COURT, PEOPLE DON'T REALLY GET

25   ANY TIME.  SO THEY JUST ROLL THROUGH AND THEY GROW THEIR

1    ORGANIZATION, WHICH IS WHAT YOU DID.

2              AS FOR YOUR HISTORY AND CHARACTERISTICS:

3    ASSAULT WITH A DEADLY WEAPON AT AGE 21.  WE JUST RUN

4    THROUGH THE CRIMINAL HISTORY.  FELONY ASSAULT WITH A

5    DEADLY WEAPON INFLICTING SERIOUS INJURY, AGE 22.  YOU

6    ONLY SERVED A YEAR FOR THAT.  FINANCIAL CARD FRAUD AT AGE

7    22.  FELONY POSSESSION OF COCAINE AT AGE 29.

8              A LOT OF PEOPLE ARE AGING OUT.  SOME PEOPLE

9    LEARN WITH SOME INTERACTION IN THE SYSTEM THAT BEING A

10   CAREER CRIMINAL IS NO WAY TO LIVE.  BUT NOT YOU.

11             YOU VIOLATED YOUR PROBATION.  ASSAULT

12   CONVICTION AT AGE 31; TWICE.  FELONY POSSESSION WITH

13   INTENT TO SELL AND DELIVER COCAINE AT AGE 32.  AGAIN, ALL

14   IN STATE COURT.  YOU GET AN 11 TO 14 MONTHS SENTENCE THAT

15   IS SUSPENDED.  YOU GET PUT ON PROBATION.  PROBATION IS

16   REVOKED.

17             AGE 36, DEFYING RECIDIVISM STATISTICS.  A LOT

18   OF PEOPLE BY THE MID-30'S AGE OUT OF CRIMINAL BEHAVIOR.

19   NOT YOU.  FELONY POSSESSION OF A FIREARM BY A FELON.

20   READ THE DESCRIPTION OF THAT.  APPARENTLY UPSET THAT YOUR

21   GIRLFRIEND, SONYA BASS, IS GOING TO BREAK OFF THE

22   RELATIONSHIP, SO YOU PISTOLWHIP HER.

23             FELONY ASSAULT INFLICTING SERIOUS INJURY AT

24   AGE 36.  ASSAULT ON BILLY JOE SIMMONS.  AGE 37, AGAIN,

25   DEFYING ALL RECIDIVISM STATISTICS, FELONY MAINTAINING A

1  VEHICLE PLACE, DWELLING PLACE FOR CONTROLLED SUBSTANCES.

2  YOU PLED GUILTY.  YOU GET SENTENCED TO 96 TO 125 MONTHS

3  CUSTODY AND THE JUDGE SUSPENDS IT.  PUTS YOU ON

4  PROBATION.

5       IT DOESN'T SLOW YOU DOWN.  YOU ARE A

6  COMMITTED, COMMITTED DRUG DEALER AS REFLECTED IN THE LIFE

7  YOU HAVE LIVED, MR. ALSTON.

8       I WILL GIVE YOU CREDIT FOR YOUR COOPERATION.

9  YOU ASSISTED IN A VARIETY OF INVESTIGATIONS.  BUT, BY NO

10  STRETCH CAN THAT WIPE AWAY ALL THE WRONG YOU HAVE DONE

11  THROUGHOUT YOUR WHOLE LIFE.

12       ESSENTIALLY, AS AN ADULT, THIS REPORT TELLS ME

13  THAT WEEK AFTER WEEK, MONTH AFTER MONTH, YEAR AFTER YEAR,

14  YOU ARE ONE COMMITTED DRUG DEALER.

15       AND THE REALITY IS, YOU GRADUATED FROM HIGH

16  SCHOOL.  YOU COULD HAVE WORKED, BUT CHOSE NOT TO.  THE

17  REPORT REFLECTS YOUR WORK HISTORY WHICH IS SPOTTY AT

18  BEST, ESSENTIALLY NOT VERIFIABLE.

19       YOU MADE A LOT OF MONEY AS A DRUG DEALER.  YOU

20  WILL PAY THE PRICE FOR THAT.

21       THERE IS A NEED TO DETER PEOPLE WHO ARE AS

22  COMMITTED TO THE DRUG TRADE AS YOU HAVE BEEN.  THERE IS A

23  NEED TO INCAPACITATE YOU.  THERE IS A NEED TO SEND A

24  MESSAGE AT WHATEVER LEVEL TO PEOPLE WHO DON'T SEEM TO GET

25  IT IN STATE COURT, WHO -- SOME DON'T GET IT AT A YOUNG

1    AGE.  SOME, THANKFULLY DO.  THERE ARE SOME THAT GET

2    ARRESTED AND CHARGED AND ARE SENTENCED IN THEIR 20'S AND

3    THEY TURN THEIR LIFE AROUND.  THEY REALIZE THEY WOULD

4    RATHER WORK AT A HONEST JOB, MAKE A LOT LESS MONEY, BUT

5    BASICALLY BE FREE, THAN TO GROW A DRUG ORGANIZATION LIKE

6    YOU HAVE GROWN, EVEN WHILE YOU ARE IN PRISON, CONTINUE

7    THE CONSPIRACY, HIDE THE MONEY, GET OUT, GET RIGHT BACK

8    IN IT, MOVING LARGE QUANTITIES OF DOPE.

9              AND YOU ARE A SMART MAN.  YOU SEE THE

10   SECONDARY EFFECTS.  YOU SEE WHAT CRACK HEADS DO, WHAT

11   COCAINE ADDICTS DO.  THEY GO ROB PEOPLE AND STEAL FROM

12   PEOPLE.  YOU DON'T CARE.  DRUG DEALERS DON'T CARE.  IT'S

13   ALL ABOUT THEIR OWN GREED.  THEY WANT THE MONEY.  IT'S

14   GREED.  IT'S ABSOLUTE, ABJECT SELFISHNESS.  THAT IS WHAT

15   IT IS.

16             AND THAT IS HOW YOU HAVE LIVED YOUR LIFE.

17   THERE IS NO DENYING IT.  ABSOLUTELY NO DENYING IT.  AND

18   IT'S PATHETIC.  AND IT'S MORE THAN PATHETIC.  IT'S

19   CRIMINAL, SERIOUSLY CRIMINAL.  AND YOU WILL PAY A PRICE

20   FOR IT TODAY.

21             AND I WILL BALANCE YOUR COOPERATION AGAINST

22   THE SERIOUSNESS OF THE OFFENSE, THE NEED TO INCAPACITATE

23   YOU, THE NEED TO DETER YOU, AND THE NEED TO PROVIDE JUST

24   PUNISHMENT.

25             HAVING FULLY CONSIDERED THE ENTIRE RECORD IN

1    THIS CASE, PURSUANT TO THE SENTENCING REFORM ACT OF 1984

2    AND IN ACCORDANCE WITH THE SUPREME COURT'S DECISION IN

3    UNITED STATES VERSUS BOOKER, IT'S THE JUDGMENT OF THE

4    COURT THAT THE DEFENDANT, THOMAS GRANDVILLE ALSTON, IS

5    HEREBY COMMITTED TO THE CUSTODY OF THE BUREAU OF PRISONS

6    TO BE IMPRISONED FOR A TERM OF 324 MONTHS ON COUNT 1 AND

7    A TERM OF 240 MONTHS ON COUNT 2 TO BE SERVED

8    CONCURRENTLY.

9            UPON RELEASE FROM IMPRISONMENT, THE DEFENDANT

10   SHALL BE PLACED ON SUPERVISED RELEASE FOR A TERM OF FIVE

11   YEARS.  THIS TERM CONSISTS OF FIVE YEARS ON COUNT 1 AND

12   THREE YEARS ON COUNT 2, SUCH TERMS TO RUN CONCURRENTLY.

13           WITHIN 72 HOURS OF RELEASE FROM THE CUSTODY OF

14   THE BUREAU OF PRISONS, YOU SHALL REPORT IN PERSON TO THE

15   PROBATION OFFICE IN THE DISTRICT TO WHICH YOU ARE

16   RELEASED.

17           WHILE ON SUPERVISED RELEASE, YOU SHALL NOT

18   COMMIT ANOTHER FEDERAL, STATE, OR LOCAL CRIME.  YOU SHALL

19   NOT ILLEGALLY POSSESS A CONTROLLED SUBSTANCE.  YOU SHALL

20   NOT POSSESS A FIREARM.

21           YOU SHALL COMPLY WITH THE STANDARD CONDITIONS

22   OF THE DISTRICT AND THE FOLLOWING ADDITIONAL CONDITIONS:

23           YOU SHALL PARTICIPATE AS DIRECTED BY PROBATION

24   FOR NARCOTIC ADDICTION TREATMENT.

25           YOU SHALL CONSENT TO A WARRANTLESS SEARCH IN

```
1    ACCORDANCE WITH THE STANDARD CONDITIONS OF THE DISTRICT.

2            YOU SHALL COOPERATE IN THE COLLECTION OF DNA.

3            YOU SHALL PAY A SPECIAL ASSESSMENT OF $200.

4            I AM NOT GOING TO IMPOSE A FINE.  ANY MONEY

5    YOU EARN WHILE INCARCERATED WILL GO TO SUPPORT YOUR

6    DEPENDENTS.

7            YOU SHALL FORFEIT TO THE UNITED STATES

8    INTEREST IN PROPERTY SPECIFIED IN THE PRELIMINARY ORDER

9    OF FORFEITURE.

10           I HAVE CONSIDERED ALL THE 3553(A) FACTORS.

11   AND I WOULD IMPOSE THIS AS AN ALTERNATIVE VARIANT

12   SENTENCE IF FOR SOME REASON I HAVE MISCALCULATED THE

13   ADVISORY GUIDELINE RANGE IN ACCORDANCE WITH UNITED STATES

14   VERSUS KEENE, 470 F. 3D 1347, ELEVENTH CIRCUIT, 2006.

15           MR. ALSTON, YOU CAN APPEAL YOUR CONVICTION IF

16   YOU BELIEVE THAT YOUR GUILTY PLEA WAS SOMEHOW UNLAWFUL OR

17   INVOLUNTARY, OR IF THERE IS SOME OTHER FUNDAMENTAL DEFECT

18   IN THE PROCEEDING THAT WAS NOT WAIVED BY YOUR GUILTY

19   PLEA.

20           YOU ALSO HAVE A STATUTORY RIGHT TO APPEAL YOUR

21   SENTENCE UNDER CERTAIN CIRCUMSTANCE, PARTICULARLY IF YOU

22   THINK YOUR SENTENCE IS CONTRARY TO LAW.  HOWEVER, YOU DID

23   ENTER INTO A PLEA AGREEMENT WHICH CONTAINS AN APPELLATE

24   WAIVER.

25           IN LIGHT OF YOUR SENTENCE, IT'S MY VIEW YOU
```

1    HAVE WAIVED YOUR RIGHT TO APPEAL, BUT IF YOU BELIEVE THE

2    WAIVER IS UNENFORCEABLE OR INAPPLICABLE, YOU CAN PRESENT

3    THAT THEORY TO THE APPELLATE COURT.

4              WITH FEW EXCEPTIONS, ANY NOTICE OF APPEAL MUST

5    BE FILED WITHIN 14 DAYS OF THE JUDGMENT BEING ENTERED ON

6    THE DOCKET IN YOUR CASE.

7              IF YOU ARE UNABLE TO PAY THE COSTS OF AN

8    APPEAL, YOU MAY APPLY FOR LEAVE TO APPEAL IN FORMA

9    PAUPERIS.  IF YOU SO REQUEST, THE CLERK OF COURT WILL

10   PREPARE AND FILE A NOTICE OF APPEAL ON YOUR BEHALF.

11             MR. SILVERMAN, IS THERE ANYTHING ELSE TODAY,

12   SIR?

13             MR. SILVERMAN:  NO, SIR.

14             THE COURT:  ANYTHING ELSE FROM THE GOVERNMENT?

15             MR. BRADSHER:  NO, YOUR HONOR.

16             THE COURT:  THAT WILL CONCLUDES THE MATTER

17   INVOLVING MR. ALSTON.  GOOD LUCK TO YOU, SIR.

18             (WHEREUPON, THE PROCEEDINGS WERE ADJOURNED.)

19

20

21

22

23

24

25

1

2

3

4

5                              CERTIFICATE

6

7              THIS IS TO CERTIFY THAT THE FOREGOING

8    TRANSCRIPT OF PROCEEDINGS TAKEN IN THE UNITED STATES

9    DISTRICT COURT IS A TRUE AND ACCURATE TRANSCRIPTION OF

10   THE SHORTHAND NOTES OF THE PROCEEDINGS TAKEN BY ME IN

11   MACHINE SHORTHAND AND TRANSCRIBED BY COMPUTER UNDER MY

12   SUPERVISION.

13              DATED THIS 7TH DAY OF MARCH, 2014.

14

15

16                                    /S/ SHARON K. KROEGER
                                     COURT REPORTER
17

18

19

20

21

22

23

24

25